# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Shawn A. McCollum, | Case No. 21-cv-1774 (NEB/HB) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Jeff Titus, Warden; Sherlinda Wheeler, Acting Warden; Paul Schnell, Comm'r; Joan Wolff, RN Supervisor; Christine Pawelk, Ops. Dir.; Michelle Smith, Dep. Comm'r; Nanette Larson, Asst Comm'r; and Does 1-100, sued in their professional capacities,[1] | |
| Defendants. | |

McCollum filed a single-count, verified complaint against Defendants asserting a cause of action under 42 U.S.C. § 1983 for violation of his right to be free from cruel and unusual punishment under the Eighth Amendment as well as the right to Due Process under the Fourteenth Amendment.[2] This matter is now before the Court on Defendants'

---

[1] Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). "[T]o sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Id.* Plaintiff's complaint primarily states that he is suing the Defendants in their official capacities (*see, e.g.*, Compl. at 1 [ECF No. 1-1]), but it also states at one point that "Jeff Titus and DOES 1 through 100 . . . are now being sued in their professional and individual capacities." (Compl. at 5; *see also* Pl.'s Mem. Opp. Mot. Dismiss at 5 [ECF No. 31].) Therefore, the Court will treat this statement as sufficient to invoke personal capacity claims against Jeff Titus and Does 1-100, despite the "professional capacity" characterization in the case caption.

[2] Plaintiff's complaint is split into several documents: a form Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 [ECF No. 1] ("Form Complaint" or "Form Compl."), a factual Complaint [ECF No. 1-1] (hereafter "Complaint" or "Compl."), a Civil Cover Sheet [ECF No. 1-2], and a legal memorandum [ECF No. 2] ("Plaintiff's

Motion to Dismiss [ECF No. 25]. This motion has been referred to the undersigned for a report and recommendation under 28 U.S.C. § 636 and D. Minn. LR. 72.1. Based on the following, it is respectfully recommended that the motion be granted.

## I.     Background

Shawn A. McCollum is a 47-year-old male with a history of ischemic heart disease, hypertension, atrial enlargement, thromboembolic disease, mitral valve insufficiency, and hypertrophic cardiomyopathy. (Compl. ¶¶ 8-9, 15.) While an inmate at the Minnesota Correctional Facility-Oak Park Heights ("MCF-OPH") (*id.* ¶ 6), McCollum contracted the Covid-19 virus as confirmed by a nasal swab test on September 16, 2020 (*id.* ¶ 16). He alleges that as a result, he temporarily lost his senses of smell and taste (*id.* ¶ 17, 23); his senses of smell and taste continue to be muted (*id.* ¶¶ 23, 34); he suffers from joint pains, severe fatigue, depression, heart problems, and blood clots from the "Long Haulers Effect" (*id.* ¶¶ 18-20, 30-32); and the symptoms of his underlying medical conditions worsened including shortness of breath, heart palpitation, and chest pains (*id.* ¶¶ 21, 33). He alleges that a study by a doctor revealed that Plaintiff was in a constant state of atrial fibrillation—a state of irregular and often rapid heart rate—which explained some of Plaintiff's chest pains. (*Id.* ¶ 21.) Plaintiff states that because of poor medical treatment and lack of access to quality healthcare, he pours ice cold water over his body several times a week to shock his heart back into normal rhythm. (*Id.*)

---

Memorandum in Support"). The Complaint begins with five pages of a "Federal Rules of Civil Procedure Rule 8 Introduction" followed by numbered paragraphs.

McCollum attributes his having contracted Covid-19 to the MCF-OPH's failure to protect inmates from the spread of Covid-19, and particularly Warden Jeff Titus who is "responsible for ensuring the safety and wellbeing of prisoners under his supervision." (*Id.* at 4 (citing Minn. Stat. § 241.021).) He alleges several specific failings in his Complaint, including that the chemicals used by MCF-OPH to clean the cells are not certified to kill the Covid-19 virus (*id.* ¶ 25); the prison does not provide alcohol-based hand sanitizers (*id.*); the prison requires inmates to share bathrooms (*id.* at 3); and MCF-OPH has not cleaned its air handlers since between 2005-2011, even though Covid-19 is spread through the air (*id.* ¶ 26). He also asserts that despite recommendations by the Center for Disease Control and Minnesota Department of Correction to implement social distancing policies, social distancing is nearly impossible due to the prison conditions. (*Id.* ¶ 28.)

McCollum further alleges that what policies are in place to protect the safety and well-being of the inmate population are not followed by the officers. Officers and staff do not wear face coverings. (*Id.* at 29.) Medical staff do not change their gloves after handling an infected inmate and his or her belongings. (*Id.*) Correctional officers walk from housing for infected inmates to housing for non-infected inmates without changing gloves or washing hands. (*Id.*)

Finally, McCollum alleges that although some inmates are vaccinated and that he himself benefits from natural immunity as a result of having had Covid-19, such protections do not guard against variants of Covid-19 (*id.* ¶ 36) or defend Plaintiff from the Long Haulers Effect. (*See* Pl.'s Mem. Supp. at 3-4.)

Based on the foregoing allegations, McCollum claims Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment as well as his due process rights under the Fourteenth Amendment. (*Id.* ¶¶ 34-38.) He contends Warden Titus and other MCF-OPH officials 1) failed to protect McCollum from the spread of Covid-19 within the jail and 2) fail to protect McCollum from future infections. He also names as defendants Sherlinda Wheeler, Paul Schnell, Joan Wolff, Christine Pawelk, Michelle Smith, and Nanette Larson. (*See* Form Compl. at 1, 4, 6; Compl. at 1.) McCollum seeks compensatory relief, punitive damages, an injunction, declaratory judgment (Compl. at 20) and release[3] (Pl.'s Mem. Supp. at 6).

Defendants move to dismiss on the grounds that 1) the complaint does not meet the standards of Federal Rule of Civil Procedure 8 because it is a "kitchen-sink" pleading against all defendants; 2) the complaint fails to state a claim under either the Fourteenth or Eighth Amendment; 3) the complaint fails to allege the defendants' direct and personal involvement in the alleged unconstitutional conduct; 4) the Eleventh Amendment bars a suit for damages against the officers in their official capacity; 4) to the extent that defendants are sued in their individual capacities, they are entitled to qualified immunity; and 5) to the extent the defendants are sued in their official capacities, state officials are not persons for the purposes of § 1983.

---

[3] The Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). Certainly, some of the relief Plaintiff seeks falls outside the "core of habeas corpus," and his suit is therefore not entirely barred by the implicit habeas petition exception. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). But if Plaintiff seeks release, he cannot do it in this lawsuit, but "must seek federal habeas corpus relief (or appropriate state relief) instead." *Id.* at 78.

## II. Motion to Dismiss

### A. Standard of Review

In this pro se prisoner case, the Court must liberally construe the complaint in favor of the Plaintiff and take as true all factual allegations. *See Estelle v. Gamble*, 429 U.S. 97, 99 (1976). Nevertheless, the complaint must still allege sufficient facts to support the claims advanced.[4] *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factional matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[4] Contrary to Plaintiff's assertions (Pl.'s Mem. Opp. Mot. Dismiss at 8 [ECF No. 31]), the standard is not "good cause." There is no equitable exception to the pleading standards that would permit the Court to deny a motion to dismiss merely because Plaintiff's complaint concerns fundamental constitutional rights.

Section 1983 creates a cause of action against "every person, who under color of any statute, ordinance, regulation, custom or usage" subjects or causes to be subjected any person to deprivation of rights secured by the Constitution or federal laws. 42 U.S.C. § 1983. A plaintiff in his complaint must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015) (quoting *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010). A complaint under § 1983 should be dismissed where the defendants are left without notice of the basis for plaintiff's allegations of violations of his or her constitutional or statutory rights. *See id.*

### B. Rule 8

"A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). "Kitchen-sink" and "shotgun" complaints—complaints in which plaintiff brings every conceivable claim against every conceivable defendant, are routinely rejected under Rule 8. *Id.* (quoting *Gurman v. Metro Hous. & Develop. Auth.*, 2011 U.S. Dist. LEXIS 69977, at *3 (D. Minn. June 9, 2011). "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983). However, if the complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. *Tatone*, 857 F. Supp. 2d at 832 (collecting cases).

Defendants argue that Plaintiff has failed to identify which defendant's conduct was unlawful and instead Plaintiff relies on generalized allegations as to all defendants—including unknown and unidentified correctional officers and nurses. Accordingly, Defendants contend Plaintiff has not "set forth specific allegations showing what each named defendant allegedly did, or failed to do" that was purportedly unlawful. *Johnson v. Minn. Dep't of Corrs.*, Case No. 12-cv-784 (PAM/JSM), 2012 WL 2050246, at *3 (D. Minn. May 15, 2012).

After careful review of Plaintiff's complaint, the Court agrees that it fails to give sufficient notice to Sherlinda Wheeler, Paul Schnell, Joan Wolff, Christine Pawelk, Michelle Smith, and Nanette Larson. Outside of Section III.B of Plaintiff's Form Complaint listing each defendant's name, position, and place of employment and the captions of his subsequent documents, there are no allegations describing the ways in which these specific defendants were directly or indirectly responsible for the complained-of conditions. Indeed, they are not mentioned elsewhere by name at all, including under Plaintiff's single express cause of action. (*See* Compl. § VI ¶¶ 35-38 (all beginning with "Defendants, Warden Jeff Titus and Does 1-100").) Accordingly, the Court will recommend that the claims against these Defendants be dismissed.

However, Jeff Titus and Does 1-100 are alleged to have caused—through action or inaction—the complained-of harms. The Doe Defendants, by failing to follow prison sanitation protocols and CDC guidance related to Covid-19, allegedly violated Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments. Further, the complaint specifically alleges that Warden Titus is responsible for overseeing conditions

7

at MCF-OPH. Drawing all inferences in favor of the Plaintiff, the complaint provides sufficient notice to Warden Titus of Plaintiff's claim that he should have done more to enforce the prison's policies or promulgate additional or difference policies to curb the spread of Covid-19.

### C. Claims under the Fourteenth Amendment

Plaintiff's caption on his Complaint includes a reference to "due process violations," but he offers virtually no explanation of what those violations were, or even whether he intends to bring a procedural or substantive due process claim.

"To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty, or property interest." *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). The plaintiff must also show that the defendants deprived him of such an interest without constitutionally adequate process. *See Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011); *see also Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (elements of procedural due process claim).

The only possible allegation of insufficient due process comes from Plaintiff's explanation in the Form Complaint detailing why he has not exhausted his administrative remedies. (Form Compl. § II.D.) He alleges that he contracted Covid-19 after a policy change on August 24, 2020,[5] which stated that "Health Services staff will initiate communication directly with any individual they [may] be reviewing for consideration of

---

[5] https://mn.gov/doc/assets/CMR Notice to Offenders - Update to CMR Process_tcm1089-444672.pdf.

8

conditional medical release, and applications [will] no longer be[] accepted." (*Id.*) He also alleges that a corrections officer prevented him from filing a grievance complaint. (Compl. ¶¶ 6-7.)

However, Defendants in this case are not moving to dismiss the complaint based on a failure to exhaust his administrative remedies. Even if the lack of an application process deprived him of the ability to present his claims to the prison and therefore perfect his right to file suit for the same, there has been no violation of that right because he has been able to present his claims to the Court without immediate dismissal for failure to exhaust. Moreover, he has not explained how the prison's policy of contacting prisoners eligible for conditional medical release provides constitutionally inadequate process or how the value of an affirmative application process outweighs the government's fiscal and administrative interests. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To the extent plaintiff was dissatisfied with the outcome of the process, he has not alleged a cognizable due process claim. *See Mathews*, 424 U.S. at 349. Even if the process resulted in the erroneous denial of conditional medical release, there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Bailey v. Gardebring*, 940 F.2d 1150, 1157 (8th Cir. 1991) (rejecting substantive due process claim because "a convicted criminal has no fundamental right to consideration for early release").

As for substantive due process, Plaintiff does not allege any fundamental right was violated, except and to the extent the Fourteenth Amendment makes the Eighth Amendment protections applicable to the state correctional facility. *See Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (elements of a substantive due process violation requiring either governmental action that infringes a fundamental right in a way that is not narrowly tailored to a compelling state interest or outrageous conduct that shocks the conscience); *Miles v. Johnson-Piper*, Case No. 19-cv-1078 (WMM/KMM), 2020 WL 1330028, at *5 (D. Minn. Mar. 23, 2020) (adopting report and recommendation of dismissal based on a failure to identify a violation of a deeply rooted fundamental right); *see also Estelle*, 429 U.S. at 102 (recognizing the Eighth Amendment's ban on inflicting cruel and unusual punishments is made applicable to the States by the Fourteenth Amendment).

Accordingly, the Court recommends dismissal of Plaintiff's claims under the Fourteenth Amendment for failure to state either a procedural or substantive due process claim.

### D. Claims under the Eighth Amendment

The primary thrust of the complaint is an alleged violation of Plaintiff's rights under the Eighth Amendment. To state a claim for a violation of an inmate's right to be free from cruel and unusual punishment under the Eighth Amendment, the complaint must state how prison officials failed to provide humane conditions of confinement such as inadequate food, shelter, medical care, and safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). First, the deprivation of the right must be sufficiently serious such that the

prison official's act or omission results in the denial of the "minimal civilized measure of life's necessities." *Id.* at 834. Second, the prison official must have a sufficiently culpable state of mind, one of deliberate indifference to inmate health or safety. *Id.* The official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Court reads the complaint to include a claim for deliberate indifference to plaintiff's medical needs and failure to protect from a serious risk of illness. These claims are ultimately analyzed under the same standard of deliberate indifference. Additionally, Accordingly, the Court will treat them together.

A cognizable failure-to-protect claim requires allegations showing that 1) defendants knew of facts from which they could infer the existence of a substantial risk of harm to plaintiff; 2) defendants drew the inference; and 3) defendants failed to take reasonable steps to protect plaintiff. *See Farmer*, 511 U.S. at 836-38; *Helling v. McKinney*, 509 U.S. 25, 34 (1993) (holding that prison authorities may not be deliberately indifferent to "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" and citing *Hutto v. Finney*, 437 U.S. 678, 682 (1978)); *see also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (holding that deliberate indifference test applies to a claim challenging the adequacy of precautionary measures to reduce the risk of infection). Deliberate indifference to a serious medical need is a specific application of the same standard. *See, e.g.*, *Scott v. Benson*, 742 F.3d 335 (8th Cir. 2014).

Plaintiff alleges that he suffered from serious medical conditions related to his heart. (Compl. ¶¶ 8-13.) Plaintiff was under the care and custody of the Minnesota Department of Corrections since 2015, suggesting they were aware of his medical conditions. (*Id.* ¶ 12.) The Centers for Disease Control and Prevention ("CDC") found that "[p]eople of any age with certain underlying medical conditions [such as serious heart conditions like cardiomyopathies] are at *increased* risk for *severe* illness from COVID-19." (*Id.* ¶ 14 (emphasis added).) The CDC also recommended that prisons assess whether certain residents or staff are more likely to contract the virus and suffer severe effects. (*See* CDC's Guidance for Correctional & Detention Facilities[6] cited at Compl. ¶¶ 4-5).) The Commissioner of the Minnesota Department of Corrections, Paul Schnell, recommended certain social distancing policies to limit the transmission of Covid-19. (*Id.* ¶ 28.) MCF-OPH set social distancing and cleaning protocols. (*Id.* ¶ 29.) There were certainly facts from which the individual could infer that Plaintiff, due to his underlying medical conditions, was at an increased risk of contracting Covid-19 and suffering severe symptoms. *See Angelica C. v. Imm. & Cust. Enf.*, Case No. 20-cv-913 (NEB/ECW), 2020 WL 3441461, at *14 (D. Minn. June 5, 2020) (holding COVID-19 presents an objectively serious risk of harm to inmates); *compare with Frohlich v. United States*, Case No. 20-cv-2692 (PJS/HB), 2021 WL 2531188, at *3 (D. Minn. June 21, 2021) (no substantial risk of serious harm for "fully vaccinated inmate at a facility that is

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

entirely free of COVID-19"); *United States v. Graham*, 452 F. Supp. 3d 871, 879 (D. Minn. 2020) (no medical condition that places him at greater risk).

However, even assuming for the sake of argument that the complaint sufficiently alleges that one or more of the individual Defendants knew there was a substantial risk of severe illness for inmates suffering from underlying medical conditions and that Plaintiff was such an inmate, the complaint does not plausibly allege that specific Defendants with such knowledge deliberately ignored that risk in acting or failing to act. *See Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007) ("An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it.") Deliberate indifference is an extremely high standard that requires a mental state akin to criminal recklessness. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). Allegations that the prison warden has been unable to contain the transmission of the virus, without more, does not plead deliberate indifference. *Frohlich*, 2021 WL 2531188, at *3 (collecting cases). Allegations that the Doe Defendants violated a prison policy—here relating to sanitation—do not automatically constitute deliberate indifference. *See Luckert v. Dodge Cnty.*, 684 F.3d 808, 819 (8th Cir. 2012). The complaint lacks any allegation suggesting defendants denied him access to medical care, interfered with his proscribed treatment, or deliberately failed to respond to his serious medical needs. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To the contrary: the complaint affirmatively alleges that Titus and the Doe Defendants implemented—even if imperfectly—Covid-19 precautionary protocols and that doctors attended to Plaintiff's heart issues. (*See, e.g.*, Compl. ¶¶ 21 (heart study of Plaintiff), 25 (cleaning supplies), 29

(nurses caring for inmates).) The Eighth Amendment does not require prison officials take every measure necessary to eliminate the risk of transmissible diseases nor hold them liable when inmates contract a disease despite reasonable precautions. *See Angelica C.*, 2020 WL 3441461, at *16 (citing *Butler*, 465 F.3d at 345-46).)

Plaintiff relies on *Helling v. McKinney*, 509 U.S. 25, 33 (1993) and *Thakker v. Doll*, 421 F. Supp. 3d 358 (M.D. Pa. 2020) for the proposition that the prison conditions at MCF-OPH violated the Eighth Amendment. Specifically, he contends that "placing inmates as if crowding them like sardines in a can with inmates subject to COVID-19 infection" is exactly the condition proscribed by *Helling*.

In *Helling*, the Supreme Court held that prison officials may be liable for their deliberate indifference to conditions that expose inmates to a serious, communicable disease. 509 U.S. at 33. The Court had previously recognized in *Hutto v. Finney*, 437 U.S. 678 (1978), that overcrowding in cells with inmates that had infectious diseases such as hepatitis and venereal disease, amounted to punishment. But while *Helling* and *Hutto* establish a theory of liability under the Eighth Amendment, that theory requires deliberate indifference, which, as the Court has explained, Plaintiff's complaint fails to allege. *See Amen El v. Schnell*, Case No. 20-cv-1327 (DSD/ECW), 2022 WL 1110981, at *16 (D. Minn. Jan. 31, 2022) (collecting cases holding that failing to implement and enforce COVID-19 precautionary measures—including social distancing—is unlikely to support a finding that prison officials acted with deliberate indifference).

Plaintiff's reliance on *Thakker* fares no better. In that case, immigration detainees challenged their confinement in light of prison conditions that subjected detainees of

14

advanced age or with underlying medical conditions to an increased risk of contracting Covid-19. *Thakker*, 451 F. Supp. 3d at 370. The Court concluded, under the Fifth Amendment right to due process, that there was "no rational relationship between a legitimate government objective and keeping Petitioners detained in unsanitary, tightly-packed environments," and found that "doing so would constitute a punishment to Petitioners." *Id.* Accordingly, it ordered the release of those prisoners.

Based on its findings and reasoning in *Thakker*, the Middle District of Pennsylvania also ordered the release in another case of twenty-two immigration detainees on a motion for an ex parte temporary restraining order related to the detainees' petition for habeas corpus. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 317 (3d Cir. 2020). But the Third Circuit reversed, holding that the district court failed to consider the prison officials' considerable discretion in promoting governmental objectives such as protecting public safety and managing detention facilities. *Id.* at 327. Furthermore, the district court did not meaningfully address the efforts the prison actually took to reduce the rate of transmission of Covid-19. *Id.* at 327-28 (discussing quarantining protocols, hygiene education, and use of disinfectants). The Third Circuit explicitly rejected the idea that "failure to eliminate all risk . . . establish[es] that the Government was deliberately indifferent to [Petitioners] serious medical needs." *Id.*

As in *Hope*, this Court must reject Plaintiff's attempt to hold prison officials accountable for not taking all possible measures to reduce the transmission of Covid-19. (*See* Compl. ¶ 27 ("Yet another example of the failure of the Minnesota Department of Corrections to keep the inmate population *as safe as possible* from the COVID-19 virus."

15

(emphasis added)).)  Plaintiff has not alleged action or inaction taken with deliberate indifference to Plaintiff's health or safety, and that is fatal to his claim under the Eighth Amendment.

### E.  Qualified Immunity

A government officer cannot be held personally liable for discretionary acts unless those acts violate clearly established constitutional or statutory rights of which a government officers would have reasonably known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To the extent the complaint seeks to assert personal capacity claims against Jeff Titus and Does 1-100 (*see supra* at n.1), the individual officers are entitled to qualified immunity because, for the reasons already discussed, the complaint fails to plausibly allege a violation of Plaintiff's rights under the Eighth and Fourteenth Amendments against those individuals.  Accordingly,  the individual-capacity claims should be dismissed on this alternative basis.

### F.  Official Capacity Claims

The Complaint generally asserts causes of action against the individual defendants in their professional capacities.  These claims must be treated as claims against the state of Minnesota.  A plaintiff may not sue a state in federal court unless the state consents to the suit or Congress abrogates the state's sovereign immunity.  *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004).  This immunity extends to state agencies and to official-capacity claims against state employees, regardless of the relief sought. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).  Congress has not abrogated the states' immunity against claims

brought under § 1983 and Minnesota has not waived its Eleventh Amendment immunity. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985); *Smith v. Fabian*, Case No. 10-cv-2193 (JRT/TNL), 2012 WL 1004982, at *3 (D. Minn. Mar. 25, 2012) (no waiver of sovereign immunity as to section 1983 claims).  Additionally, the Supreme Court has explicitly held that a State and its officials acting in their official capacities are not "persons" under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, no cause of action lies against the state of Minnesota or the Defendants in their official capacities, and these claims should be dismissed for this alternative reason.

Because the Court concludes that the complaint fails to state a claim upon which relief may be granted, the Court does not need to address the deficiencies with the remedies sought.

## III.   Request for Leave to Amend

In response to Defendants' motion to dismiss, McCollum argued that the defects identified are curable through amendment.  (*See, e.g.*, Pl.'s Mem. Opp. at 2.)  McCollum cannot amend or supplement his complaint through argument in brief.  *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989); D. Minn. L.R. 15.1(a).  He has not moved to amend or submitted a proposed amended pleading. *Meehan v. United Cons. Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (affirming denial of request to amend for failure to comply with these requirements). Therefore, there is no proper motion before the Court for leave to file a proposed amended complaint.

On the other hand, "dismissal of a [pleading] for failure to comply with Rule 8 should [ordinarily] be with leave to amend," *Michaelis*, 717 F.2d at 438-39. Therefore, while nothing in Plaintiff's response would actually cure any of the deficiencies identified above, the Court recommends that Plaintiff be given a deadline by which to file an amended complaint against specific defendants in their individual capacities

### IV. Recommendation

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

1. Defendants' Motion to Dismiss [ECF No 25] be **GRANTED**;

2. McCollum's complaint be **DISMISSED**; and

3. McCollum be allowed to file an amended complaint that complies with Federal Rule of Civil Procedure 8, asserting specific individual capacity claims against specific defendants.

Dated: June 2, 2022                                    *s/ Hildy Bowbeer*
                                                       HILDY BOWBEER
                                                       United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).